W. E. SNELLING, Administrator, Appellee, v. MARY
M. KROGER *et al.*, Appellants; and MARY M.
KROGER, Appellant, v. CITY BANK OF MARSHALL-
TOWN *et al.*, Appellees.

Estates of Decedents: ALLOWANCE OF CLAIMS: PROCEEDINGS TO SET
ASIDE: SECURITY FOR PAYMENT: ESTOPPEL.  Where upon application
by an administrator to sell real estate for the payment of a claim
against the estate, duly allowed and approved, the sole devisee and
legatee of said estate filed an answer thereto alleging that the allow-
ance of said claim was procured by collusion and fraud, and asking
that she be allowed to defend, and offering to file a good and sufficient
bond for the payment of all claims established against said estate by
the court, and a continuance of the hearing on said application was
granted said devisee upon her filing a bond as offered, and thereafter
upon proper proceedings instituted to vacate the order allowing said
claim on the grounds of fraud and collusion, and the invalidity
thereof, it was determined by the court that said allowance should
stand, and the petition to vacate was denied, *held*, that the devisee
was estopped from denying her liability for the payment of said
claim.

*Appeal from Marshall District Court.*—HON. S. M.
WEAVER, Judge.

THURSDAY, OCTOBER 12, 1893.

THESE two actions involve the validity of a claim
of the City Bank of Marshalltown against the estate
of Mrs. M. P. Turner, deceased.  The first case is an
application to sell real estate to pay the claim, which
claim was allowed as a claim against said estate by the
approval of one Merrit Greene, then administrator,
and by an order of the district court allowing the
claim, and ordering it to be paid by the administrator.
Mary M. Kroger, the defendant in the first action or
application for an order, is the sole legatee and devisee
under the will of Mrs. Turner.  The second action was

brought by said Mary M. Kroger to set aside the order of the court allowing said claim, upon the ground that its allowance was procured by fraud and collusion. Issue was taken upon the averments of this petition, and the two actions were consolidated, and a trial had by the court, which resulted in an order or finding of the court that there was not sufficient evidence of the alleged fraud, and the prayer to set aside the allowance of the claim was denied; and it was further held that the claim was a valid claim against the estate, and an order was made that certain real estate be sold to pay the claim. Mary M. Kroger appeals.—*Affirmed.*

*Caswell & Meeker,* for appellant.

*H. E. J. Boardman* and *Brown & Miller,* for appellees.

ROTHROCK, J.—The record is quite voluminous, and involves many of the transactions of the City Bank of Marshalltown for a number of years, and the evidence touching the alleged fraudulent and collusive acts of the bank and its officers and attorneys and the acts and conduct of Merritt Greene, who was administrator of the estate when the claim was established as a valid claim against the estate, is all set out in detail in the abstract. We have carefully examined the case in all its details, and, as we adopt the conclusions reached by the learned judge who presided at the trial in the district court, we can not state the facts and conclusions better or more briefly than we find them in a statement made by the said judge. They are as follows:

"FACTS.

"*First.* That many years ago (July 1, 1873), H. E. J. Boardman, James L. Williams, John Turner and C. W. Stone entered into partnership for the transac-

tion of a banking business under the firm name and style of 'The City Bank of Marshalltown, Iowa,'" each partner having an equal one fourth interest therein.

"*Second.* That the entire capital stock of said partnership was invested in certain real estate situated in the city of Marshalltown, Iowa, the title to which real estate was taken and held by said partners in their individual names, apparently as tenants in common, and not in the name of the City Bank.

"*Third.* That, after continuing the business some years, said H. E. J. Boardman sold and transferred his interest in the business to said James L. Williams, and at a subsequent date said C. W. Stone sold and transferred his interest therein to one J. E. Henriques, and the business was continued by said Williams, Turner and Henriques under the same firm name and style, to wit, 'The City Bank of Marshalltown.'

"*Fourth.* That said several transfers from Boardman to Williams and from Stone to Henriques were evidenced and effected by ordinary deeds conveying respective interests of the retiring partners in the real estate of the firm to their said successors.

"*Fifth.* That on the —— day of July, 1883, said John Turner died.

"*Sixth.* That a short time prior to his death said John Turner, by a duly executed deed of conveyance, transferred and conveyed all of his interests in said partnership real estate to his wife, Matilda P. Turner.

"*Seventh.* That, after the death of said John Turner, his said wife and grantee (Matilda P. Turner), was received and treated by said Williams and Henriques as a partner in said bank, owning and controlling the interest therein formerly held and owned by her said husband.

"*Eighth.* That on the sixth day of October, 1885, said Matilda P. Turner made and entered into a written

agreement with one D. T. Denmead in words and figures as follows: 'This memorandum of agreement made and entered into this sixth day of October, A. D. 1885, by and between M. P. Turner, of the city of Marshalltown, county of Marshall, and state of Iowa, party of the first part, and D. T. Denmead, of the same place, party of the second part, witnesseth: That, for and in consideration of the premises and undertakings of said second party hereinafter recited and set forth, said party of the first part hereby undertakes, covenants, and agrees, for and in consideration of the sum of fourteen thousand dollars, to be paid as hereinafter provided, to sell, and by deed of warranty to convey, unto said second party, the following described real estate, the same being and situated in the town of Marshall, county of Marshall, and state of Iowa, to wit, the undivided one fourth of the west one ninth of lot numbered four (4) in block numbered fourteen (14), and the undivided fourth of the east forty feet of lot numbered one (1), and the undivided one fourth of the north forty feet of the east forty feet of lot numbered two (2) in block numbered fifteen (15) in the original town of Marshall; also to the right of way over and across the north twelve feet of the south twenty feet of lot number two (2) in block number fifteen (15) Marshall. Said first party hereby promises, undertakes, and agrees, in consideration of said sum of fourteen thousand dollars, to sell, assign, and transfer all her right, title, and interest in and to the assets, rights, credits, effects and good will of the City Bank, doing business in said premises on said lots numbers one (1) and two (2) on said block number fifteen (15); the interest intended to be hereby conveyed being the undivided one fourth of said banking business. And said second party, for and in consideration of said undertakings and agreements of said party of the first part hereinbefore recited and set forth, hereby under-

takes, promises, and agrees, on the first day of January,
A. D. 1886, to pay, or cause to be paid, to said first
party, the sum of fourteen thousand dollars ($14,000.)

"*Ninth.* That, in pursuance of said written contract,
Mrs. Turner did, on or about January 1, 1886, make
and deliver to said Denmead a deed with the ordinary
covenants of warranty, conveying to him an undivided
one fourth of said partnership real estate.

"*Tenth.* That, for many years prior to sale of Mrs.
Turner's interest to Denmead, if not from the inception
of the business in 1873, it had been the practice of the
firm to carry along upon its books substantially all the
bills receivable and other debts owing the bank as
assets, without charging off, or carrying to profit and
loss account, the bad and worthless paper which
accumulated to a considerable extent in the progress of
the business, and that, at semi-yearly periods, dividends
were declared and paid to the several partners on the
basis of said apparent resources.

"*Eleventh.* That soon after the transfer of Mrs.
Turner's interest to Denmead the new firm opened an
account with Denmead, Williams & Co., by which
name it claims to have designated or intended the old
firm as constituted immediately prior to Denmead's
purchase, to which account was charged the notes and
bills hitherto carried as assets, but now appearing to be
worthless, together with items of interest accumulated
on certain certificates of deposit outstanding at the time
of Mrs. Turner's retirement from the business.   There
were also charged to this account an item of two thou-
sand and forty-five dollars and fifty-five cents, as for
'difference between notes on hand and as shown by the
books, shortage' together with certain other matters of
minor importance.

"*Twelfth.* That on the third of February, 1886,
this account was credited with the undivided profits of
the business as shown by the books at the date of the

transfer of Mrs. Turner's interest to Denmead, and, there still appearing due from Turner, Williams & Co. a further sum of three thousand, four hundred and eighty-four dollars and sixty-four cents, the same was balanced by the following entries upon the credit side of said account: By one half shortage to date, contributed by J. L. Williams, one thousand seven hundred and forty-two dollars and thirty-two cents; by one fourth shortage to date, contributed by M. P. Turner, eight hundred and seventy-one dollars and sixteen cents; by one forth shortage to date, contributed by J. E. Henriques, eight hundred and seventy-one dollars and sixteen cents.

"*Thirteenth.* That said sum of eight hundred and seventy-one dollars and sixteen cents, credited to said account as a payment or contribution by Mrs. Turner, was not paid by her personally, but at the date of said item said City Bank was indebted to her upon deposit account to the amount of several thousand dollars. Said J. L. Williams, by medium of what he calls a 'memorandum check' made by himself, caused her said deposit account to be charged with said sum, and the account of Turner, Williams & Co. to be credited therewith as aforesaid. It does not clearly appear from the evidence whether at the date of this transaction any demand had ever been made upon Mrs. Turner to contribute to this alleged shortage, or whether she had any actual notice of the existence of the Turner, Williams & Co. account. It seems, however, that she was displeased or dissatisfied with said transaction, and soon thereafter withdrew her deposit from said bank, and thereafter, till her death, there was little or no further communication between them on business matters.

"*Fourteenth.* That thereafter, from time to time, said City Bank charged other items of uncollectible bills and notes, and other items of interest, to Turner,

Williams & Co., but no part of the same was ever paid by Mrs. Turner.

"*Fifteenth.* That on the thirteenth day of March, 1889, said Matilda P. Turner died, making, by her will, the defendant, Mary M. Kroger, her executrix and sole legatee and devisee.

"*Sixteenth.* That the will of said Matilda P. Turner was duly admitted to probate, and the said Mary M. Kroger duly qualified as executrix thereof.

"*Seventeenth.* That on the fifth day of September, 1889, said James L. Williams filed, or caused to be filed, against said estate, a claim in the name of 'The City Bank of Marshalltown, Iowa.'

"*Eighteenth.* That soon after filing said claim the City Bank made written application to the court, alleging that said executrix had removed from the state, so that service of notice of said claim could not be made upon her, and asking that she be removed from said trust, and another be appointed administrator with the will annexed.

"*Nineteenth.* That said executrix appeared by Henderson & Margrave, her attorneys, and resisted said application, and on the tenth day of October, 1889, by said attorneys, accepted service of notice of said claim by indorsing thereon in writing the words following: 'Due, full, and legal service of notice of the within claim accepted this tenth day of October, A. D. 1889. Mary M. Kroger, Executrix of Estate of Matilda P. Turner, deceased. By Henderson & Margrave, her attorneys.'

"*Twentieth.* That soon after the acceptance of service of notice, as aforesaid, an order was entered by the court, by the consent of the parties, removing said executrix from said court, and appointing one Merrit Greene administrator with the will annexed, of the estate of said Matilda P. Turner.

"*Twenty-first.* That upon the sixteenth day of October, 1889, said Merrit Greene indorsed in writing, upon the claim filed by the City Bank as aforesaid, his approval thereof in words following, to wit: 'Approved and allowed two thousand, two hundred and eighty-two dollars and fifty-six cents this sixteenth day of October, A. D. 1889. Merrit Greene, Administrator, with the will annexed.'

"*Twenty-second.* That thereafter, upon the same day, said claim was presented to the clerk of said court for his approval, and was by him indorsed in writing as follows: 'Allowed by the court this sixteenth day of October, A. D. 1889. James Commack, Clerk.'

"*Twenty-third.* That on or about the twentieth day of November, A. D. 1889, the same being the last day of the October, 1889, term of this court, said claim was presented to this court for approval and allowance. Counsel for the defendant were not present in court, and, there being no resistance to the claim, the approval thereof by the administrator and clerk was formally confirmed.

"*Twenty-Fourth.* That on the third day of December, A. D. 1889, said administrator filed his petition in this court, showing the absence of personal assets in his hands belonging to said estate, and asking an order to sell certain real estate, of which Mrs. Turner died seized, for the purpose of paying said claim. Said Mary Kroger was a party defendant to said proceeding, and appeared thereto by her said attorneys.

"*Twenty-fifth.* That on the sixteenth day of January, 1890, said defendant filed her answer to said petition for order to sell real estate, averring, in substance, that the allowance of said claim was procured by collusion and fraud, and without notice or knowledge thereof to her or her attorneys, and that the claim was wholly unjust, and without color or foundation or

right, and asked that said allowance be set aside, and she be permitted to defend.

"*Twenty-sixth.* That in said answer said Mary M. Kroger averred her ability and willingness to pay all just claims against the estate 'whenever the same are presented and shown to be just, and are properly allowed by the court;' also that she is 'able, ready, and willing to furnish a good and sufficient bond in any reasonable sum that the court may require, and now here offers to do so under direction of the court with suitable conditions as the court may direct, for the payment, within such reasonable time as the court shall direct, of every dollar of claims which may be allowed and established by the court, without needless expense and sacrifice of the real estate.'

"*Twenty-seventh.* That at or about the time of filing said answer said Mary M. Kroger also filed, in the probate proceedings, a petition of intervention setting up substantially the same matters pleaded in said answer, and asked to have the allowance of said claim set aside, and that she be permitted to resist the same.

"*Twenty-eighth.* That on the fourteenth day of April, 1890, said administrator filed his answer to said petition of intervention, denying all allegations of fraud and collusion.

"*Twenty-ninth.* That on the twenty-third day of April, 1890, said Mary M. Kroger, by her attorneys, filed a motion for continuance of said cause over the term of court then in session, and in said motion averred 'that no harm could come to the claimant by granting the time asked, as the delay would be compensated by accruing interest, and defendants have in their answer offered, and within any reasonable time and sum, which the court may determine, can and will secure the same by bond.'"

"*Thirtieth.* That said motion was sustained, and the cause ordered continued on certain conditions, the said order and conditions being made in words following, to wit: 'Motion for continuance granted at costs of Mary M. Kroger, and on the following terms, to wit: She is within thirty days from this date to file herein a good and sufficient bond in the penal sum of three thousand dollars, for the use of the city bank, and costs as shall hereafter be finally determined in this adjudication. If said bond be not filed herein in manner and time as above stated, city bank claim shall be regarded as established, and shall be confirmed at the next term of this court.'

"*Thirty-first.* That thereupon said Mary M. Kroger did file her bond with the clerk, which was executed in compliance with the order, and it was approved, and the cause continued.

"*Thirty-second.* That on the seventh day of May, 1890, said Merrit Greene having removed from the state and surrendered his said trust, W. E. Snelling was duly appointed and commissioned administrator with the will annexed, in his stead.

"*Thirty-third.* That on the twenty-ninth day of July, 1890, said Mary M. Kroger, by her said attorneys, filed in this court her petition in equity against the city bank of Marshalltown and said W. E. Snelling, administrator, as defendants, stating in extended form the history of said claim, and alleging that its allowance had been procured by fraud and collusion, and asking that said allowance be set aside and held for naught, and that the proceedings to sell her real estate to satisfy such claim be perpetually enjoined.

"*Thirty-fourth.* That at the September, 1890, term of court the defendant named in said petition in equity took issue thereon, and the said cause was consolidated for trial with the issue already joined upon the administrator's petition for order to sell real estate.

"*Thirty-fifth.* That the 'petition in equity,' hereinbefore referred to, was treated by both parties as in the nature of an application for new trial, under the provisions of chapter 1, tit. 19, of the Code of 1873, and upon that theory proceeded to a trial and hearing before the court, as provided in sections 3158 and 3160 of said Code, to determine, *first,* whether there were sufficient grounds to vacate the order of allowance, and, *second,* whether the petitioner would make a sufficient showing of a valid · defense in the event the alleged fraud in procuring the allowance was found to be established by the evidence.

"*Thirty-sixth.* . That upon said hearing the court decided that there was not sufficient evidence of the alleged fraud, and accordingly refused to set aside the allowance; but as a part of said ruling and decisions the court said: "I do not attempt, in this proceeding to determine whether Mrs. Kroger has or has not a right, notwithstanding the allowance of the claim, and notwithstanding this refusal of a new trial therein, to urge any or all defenses to the proceeding to sell her land which her mother, if living, or the administrator might have set up, which language and statement of the court was entered of record with said decision, and made a part thereof. .

"Upon the issues joined as aforesaid, and upon consideration of the facts found, as aforesaid, I reach the following conclusions of law:

"That the claim filed by said City Bank having been allowed by the administrator and by the clerk, and such allowance having been approved and confirmed by the court, and the petition to vacate such order of allowance having been denied, the same stands as a valid and subsisting claim against said administrator, and payment thereof can be enforced against him to the extent, at least, of the personal estate of the decedent coming into his hands.

"*Second.* That, having voluntarily given her bond to pay, satisfy and discharge any claim of the City Bank against the estate of M. P. Turner which may be confirmed or allowed by the court, the said Mary M. Kroger is now estopped to deny her liability to pay said claim, or the liability of her property to be subjected thereto, and it becomes unnecessary to consider or pass upon the question whether the allowance of a claim by the court, as against the administrator, is or is not conclusive upon the heir in a proceeding to subject his real estate to the payment of such claim."

We can discover no reason for further discussing the questions presented upon the appeal. When it was found, as we think correctly, that there was not sufficient evidence to authorize an order setting aside the allowance of the claim as being procured by fraud and collusion, it appears to us that it was an end to all further controversy between the parties. The bond given by Mary M. Kroger was not demanded of her. So far as appears, the other parties were content to resort to the sale of the real estate. It was given in pursuance of her voluntary offer. Having executed and filed this bond, she was not in a position to resist the claim after it was found that its allowance was not procured by fraud. It is not necessary to further elaborate the case. AFFIRMED.